UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| UNITED STATES OF AMERICA : | |
| : | |
| v. : | |
| : | No. 21-CR-68 (TNM) |
| JENNY LOUISE CUDD and : | |
| ELIEL ROSA, : | |
| Defendants. : | |

### GOVERNMENT'S OPPOSITION TO DEFENDANTS' MOTION TO SEVER

The United States of America, by and through its counsel, the United States Attorney for the District of Columbia, respectfully opposes defendant Jenny Cudd's Motion to Sever Defendant (ECF No. 26), which defendant Eliel Rosa has joined. As grounds for this opposition, the government relies on the following points and authorities, and any other such points and authorities raised at a hearing on this matter.

### FACTUAL BACKGROUND

On January 6, 2021, a joint session of the United States Congress convened at the United States Capitol, which is located at First Street Southeast, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the United States Capitol to certify the vote count of the Electoral College of the 2020 Presidential Election, which had taken place on November 3, 2020. The joint session began at approximately 1:00 p.m. Shortly thereafter, by approximately 1:30 p.m., the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Michael Pence was present and presiding, first in the joint session, and then in the Senate chamber.

As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the U.S. Capitol. Temporary and permanent barricades were in place around the exterior of the U.S. Capitol building, and U.S. Capitol Police were present and attempting to keep the crowd away from the Capitol building and the proceedings underway inside. Members of the U.S. Capitol Police attempted to maintain order and keep the crowd from entering the Capitol; however, shortly around 2:00 p.m., individuals in the crowd forced entry into the U.S. Capitol, including by breaking windows and by assaulting members of the U.S. Capitol Police, as others in the crowd encouraged and assisted those acts.

Shortly thereafter, at approximately 2:20 p.m. members of the United States House of Representatives and United States Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, the joint session of the United States Congress was effectively suspended until shortly after 8:00 p.m.

This event in its entirety is hereinafter referred to as the "Capitol Attack." Over 300 individuals have been charged in connection with the Capitol Attack, and the government expects that at least one hundred additional individuals will be charged. Defendants Jenny Cudd and Eliel Rosa are two of the individuals who unlawfully entered the Capitol and who have been charged with various crimes as a result. *See* Indictment (ECF No. 18).

Cudd and Rosa both live in Midland, Texas, and they knew each other prior to January 6, 2021. They checked into the same hotel in Washington, D.C. on January 5, 2021, and checked out on January 7. On January 6, they went to the U.S. Capitol together.

As detailed in the Statement of Facts in support of the warrant for Cudd and Rosa's arrest (ECF No. 1), on January 6, between approximately 2:35 p.m. and 2:54 p.m., Cudd and Rosa entered the United States Capitol without authorization to do so. Video footage from security cameras inside the Capitol showed the following:

- At approximately 2:35 p.m., Cudd and Rosa entered the U.S. Capitol via the Upper West Terrace Door.

- At approximately 2:36 p.m., Cudd and Rosa were inside the U.S. Capitol Rotunda. They remained inside the Rotunda until approximately 2:39 p.m. They took pictures of the Rotunda and the surrounding area.

- At approximately 2:39 p.m., Cudd and Rosa walked across the Statuary Hall area of the U.S. Capitol.

- At approximately 2:40 p.m., Cudd and Rosa walked the Statuary Hall Connector and moved off camera at approximately 2:42 p.m.

- At approximately 2:43 p.m., Cudd and Rosa departed from a large crowd inside the U.S. Capitol in front of the Main Door of the House Chamber and walked east toward the staircase.

- Cudd and Rosa subsequently walked past the staircase and past the Upper House Door, going toward the other entrance to the House Chamber.

- At approximately 2:54 p.m., Cudd and Rosa were at the Upper House Door and then departed the U.S. Capitol building.

Additionally, Cudd and Rosa were photographed inside the Capitol Building. Cudd is the female wearing the tan hat in the front left of Figure 1 below. Rosa is behind Cudd and to her left wearing a red hat.



*Figure 1*

Afterward leaving the Capitol, Cudd streamed a live video, via Facebook, which is a social media platform. From a screenshot of the video (Figure 2), Cudd appears to be wearing the same clothing she wore while inside the Capitol (Figure). Additionally, Rosa posted a photo of himself and Cudd on his Facebook page (Figure 3).




*Figure 2*                                      *Figure 3*

Cudd live streamed the video sometime after the actual forced entry of the U.S. Capitol, but on the same day, January 6, 2021. Cudd stated on the Facebook video that she was at the Willard Hotel, located at 1401 Pennsylvania Avenue NW, Washington D.C. 20004. During the video, she made the following comments to confirm the location and date of the recording: "I am sitting in front of the Willard Hotel, as I always do when I am in DC protesting"; and, "I was here today on January 6th when the new revolution started at the Capitol." The video was posted on Cudd's Facebook account.

During the Facebook video, Cudd made the following statements admitting to entering the U.S. Capitol: "We were on the south lawn listening to the President and before the speech was over we started to head up to the Capitol." She further stated, "we just pushed, pushed, and pushed, and yelled go and yelled charge. We just pushed and pushed, and we got it." She continued, "…and we got in. We got up to the top of the Capitol and there was a door open and we went inside." Additionally, further indicating her presence inside the U.S. Capitol, Cudd said, "We did break down the Nancy Pelosi's office door and somebody stole her gavel and took a picture sitting in the chair flipping off the camera." Later in the recording, Cudd said, "They had to evacuate it before we charged the Capitol." And she said, "I stood outside of the Capitol and I will send photos of that too." In addition, she added: "[F]uck yes, I am proud of my actions, I fucking charged the Capitol today with patriots today. Hell, yes I am proud of my actions."

On January 8, 2021, Cudd participated in an interview with a news station in which she described her actions on January 6, 2021, in Washington D.C., and again admitted entering the U.S. Capitol on that day. Specifically, she stated, "we walked up the steps and walked inside an open door [referring to the U.S. Capitol]." She added, "we the Patriots did storm the U.S. Capitol." And she declared, "Yes, I would absolutely do it again."

5

On January 8, 2021, Rosa was interviewed by the FBI in Midland, Texas. During the interview, Rosa admitted that he and defendant Cudd had entered the U.S. Capitol on January 6, 2021.

Cudd and Rosa are charged by indictment with the following: (1) Obstruction of an Official Proceeding, and Aiding and Abetting, in violation of 18 U.S.C. §§ 1512(c)(2) and 2; (2) Entering and Remaining in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(1); (3) Disorderly and Disruptive Conduct in a Restricted Building or Grounds, in violation of 18 U.S.C. § 1752(a)(2); (4) Disorderly Conduct in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(D); and (5) Parading, Demonstrating, or Picketing in a Capitol Building, in violation of 40 U.S.C. § 5104(e)(2)(G). *See* Indictment (ECF No. 18). A trial date has not been set.

**ARGUMENT**

**I.    Joinder is Appropriate and No Severance is Necessary**

The cases against defendants Cudd and Rosa are properly joined. In cases with multiple defendants and multiple offenses, the "weight of authority in this circuit and elsewhere regards Rule 8(b) as providing the sole standard for determining the permissibility of joinder of offenses." *United States v. (Lance) Wilson*, 26 F.3d 142, 153 n. 4 (D.C. Cir. 1994) (citations omitted); *see also United States v. Brown*, 16 F.3d 423, 427 (D.C. Cir. 1994); *United States v. Perry*, 731 F.2d 985, 989 (D.C. Cir. 1984); *United States v. (Melvin) Jackson*, 562 F.2d 789, 793-94 (D.C. Cir. 1977). Rule 8(b) provides:

> JOINDER OF DEFENDANTS.  The indictment or information may charge 2 or more defendants if they are alleged to have participated in the same act or transaction, or in the same series of acts or transactions, constituting an offense or offenses.  The defendants may be charged in one or more counts together or separately.  All defendants need not be charged in each count.

Fed. R. Crim. P. 8(b). "Rule 8 not only may shield a party from prejudicial joinder but also serves to protect a variety of other interests served by joint trials including the interests in 'conserv[ing] state funds, diminish[ing] inconvenience to witnesses and public authorities, and avoid[ing] delays in bringing those accused of crime to trial.'" *Brown*, 16 F.3d at 428 (citations omitted). "There is a preference in the federal system for joint trials." *United States v. Bikundi*, 926 F.3d 761, 780 (D.C. Cir. 2019). This Circuit construes Rule 8(b) broadly in favor of joinder. *See United States v. Nicely*, 922 F.2d 850, 853 (D.C. Cir. 1991); *Jackson*, 562 F.2d at 796-97 (Rule 8 is "interpreted broadly in favor of initial joinder"). Thus it is "difficult to prevail on a claim that there has been a misjoinder under Rule 8(b)." *Nicely*, 922 F.2d at 853.

The propriety of joinder "is determined as a legal matter by evaluating only the 'indictment [and] any other pretrial evidence offered by the Government.'" *United States v. Carson*, 455 F.3d 336, 372 (D.C. Cir. 2006) (quoting *United States v. Spriggs*, 102 F.3d 1245, 1255 (D.C. Cir. 1996)). The evidence at trial "is irrelevant to a determination of proper joinder." *United States v. Bostick*, 791 F.3d 127, 145 (D.C. Cir. 2015). Joinder under Rule 8(b) "is appropriate if there is a 'logical relationship between the acts or transactions' so that a joint trial produces a 'benefit to the courts.'" *Spriggs*, 102 F.3d at 1255 (quoting *United States v. Perry*, 731 F.2d 985, 990 (D.C. Cir. 1984)).

Defendants who are properly joined under Rule 8 "may seek severance under Rule 14, which provides that '[i]f the joinder of offenses or defendants . . . appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.'" *United States v. (George) Wilson*, 605 F.3d 985, 1015 (D.C. Cir. 2010) (quoting Fed. R. Crim. P. 14(a)). As the Supreme Court has explained, Rule 14 "does not require severance even if prejudice is shown," and district courts "should grant a

severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." *Zafiro v. United States*, 506 U.S. 534, 538-39 (1993). Indeed, district courts retain "significant flexibility to determine how to remedy a potential risk of prejudice, including ordering lesser forms of relief such as limiting jury instructions." *Bikundi*, 926 F.3d at 780 (citing *United States v. Moore*, 651 F.3d 30, 95 (D.C. Cir. 2011)); *see United States v. Butler*, 822 F.2d 1191, 1194 (D.C. Cir. 1987) (acknowledging trial judges are "given great latitude" to balance interests, including to preserve judicial and prosecutorial resources, and denying defendant's motion to sever).

Once multiple defendants are properly joined in the same indictment under Rule 8(b), "[d]istrict courts should grant severance" under Rule 14 "sparingly because of the 'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors.'" *United States v. Celis*, 608 F.3d 818, 844 (D.C. Cir. 2010) (quoting *United States v. Mardian*, 546 F.2d 973, 979 (D.C. Cir. 1976) (*en banc*)). The relevant portion of Rule 14 reads as follows:

> If the joinder of offenses or defendants in an indictment, an information, or a consolidation for trial appears to prejudice a defendant or the government, the court may order separate trials of counts, sever the defendants' trials, or provide any other relief that justice requires.

Fed. R. Crim. P. 14(a). Although "the standard of 'appears to prejudice a defendant' set out in Rule 14(a) for consideration of severance, does not, on its face, provide an onerous test, the discretion afforded to district courts must be exercised with appreciation of the policy reasons favoring joinder." *United States v. Bikundi*, 14-cr-30 (BAH), 2016 WL 912169, at *46 (D.D.C. Mar. 7, 2016). In fact, the D.C. Circuit has instructed that for severance to be proper "[t]here must be a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or

8

prevent the jury from making a reliable judgment about guilt or innocence." *Bostick*, 791 F.3d at 152-53 (citation and punctuation omitted); *see also United States v. Glover*, 681 F.3d 411, 417 (D.C. Cir. 2012) (affirming district court's denial of defense motion to sever trial citing same standard). Accordingly, severance is not required simply because a defendant might have a better chance of acquittal if tried separately. *See United States v. Halliman*, 923 F.2d 873, 884 (D.C. Cir. 1991). Salient factors the Court should consider, and which militate against severance, include whether separate trials would involve (1) the presentation of the same evidence; (2) testimony from the same witnesses; and (3) the same illegal conduct. *See United States v. Manner*, 887 F.2d 317, 324 (D.C. Cir. 1989).  In conspiracy cases especially, severance should be the rare exception rather than the rule. *See United States v. (Allen) Jackson*, 64 F.3d 1213, 1217 (8th Cir. 1995) ("Rarely, if ever, will it be improper for co-conspirators to be tried together.") (citations omitted).

Cudd and Rosa are properly joined in the same indictment because, together, they both participated in the Capitol Attack. The evidence against each of them is largely the same. They both traveled from Midland, Texas to Washington, D.C.; stayed in the same hotel from January 5 to January 7; and were captured in photos and video parading together through the Capitol. The government thus anticipates that the witnesses and evidence that it will present are largely the same for both defendants (recognizing that, at this early juncture, the investigation as to these defendants is ongoing). The "'strong interests favoring joint trials, particularly the desire to conserve the time of courts, prosecutors, witnesses, and jurors,'" *Celis*, 608 F.3d at 844, thus apply to this case.

Cudd makes three arguments for why the trial of her case should be severed from Rosa's, all of which are meritless.[1] First, Cudd argues that she has moved to have her case transferred to

---

[1] Cudd's fourth argument—that a severance is necessary because she will not waive her Speedy Trial rights, but Rosa would, Motion at 5—no longer applies. At the last hearing in this case, Cudd agreed to waive and toll time pending the next hearing on April 29. Nevertheless, even if

9

Texas for trial but that Rosa does not make the same request. *See* Memorandum in Support of Jenny Cudd's Motion to Sever Defendant (ECF No. 26-1) (hereinafter, "Motion") at 2. But, as the government has explained in its opposition to Cudd's motion to transfer, that motion is meritless.

Second, Cudd argues that "Rosa made a voluntary statement to the FBI which the government plans to introduce as evidence against the parties," *id.* at 3, and that she would be unable to cross-examine him about that statement, *id.* at 4. As an initial matter, the government does not yet know whether it will seek to introduce Rosa's statement as evidence. And if it does, it must ensure that any such statement inculpated only Rosa and not Cudd. *See Bruton v. United States*, 391 U.S. 123, 126 (1968). Contrary to Cudd's suggestion, Motion at 4, doing so would ensure that Cudd's Sixth Amendment rights were not violated. *See United States v. Straker*, 800 F.3d 570, 595 (D.C. Cir. 2015) ("When the declarant expressly implicates another defendant yet renders himself unavailable for cross examination by asserting his Fifth Amendment right not to testify, use of his statement violates the defendant's right to confront his accuser. . . . But at least when (1) the jury is instructed to consider the confession against the declarant only, and (2) redactions are made such that the statement, together with other trial evidence, neither expressly

---

she refused to agree to waive time under the Speedy Trial Act going forward, Cudd's argument fails to establish that a severance is necessary to avoid prejudice to her trial rights as required under *Zafiro*. And Cudd cannot use the Speedy Trial Act as a sword to force the Court to sever her case in any event. *See United States v. Garrett*, 720 F.2d 705, 708-09 (D.C. Cir. 1983) ("Congress was concerned about the Speedy Trial Act's impact on government efforts to prosecute multidefendant cases. The exclusion in [18 U.S.C. ] 3161(h)(7) addressed this concern and was intended to avoid forcing the government to seek severance in a multidefendant trial due solely to the Act's time limitations."); *United States v. Edwards*, 627 F.2d 460, 461 (D.C. Cir. 1980) ("The exclusion under 18 U.S.C. § 3161(h)(7) is crucial in a case involving multiple defendants because it provides that an exclusion applicable to one defendant applies to all codefendants."). Moreover, this and the other motions filed by Cudd have tolled the Speedy Trial clock. 18 USCS § 3161(h)(1)(D). The court is thus not faced with a situation in which Cudd's Speedy Trial clock will run before Rosa's.

identifies defendants nor creates any inevitable association between them and the criminal activity the statement describes, there is no Sixth Amendment violation.").

Third, and finally, Cudd argues that a severance is required because she will not be able to call Rosa as a witness if they are tried together. *See* Motion at 4. Cudd's bare assertion that she "will seek" Rosa's testimony, *id.*, is insufficient to meet her "threshold burden" on this issue. *United States v. Ford*, 870 F.2d 729, 731 (D.C. Cir. 1989). As the D.C. Circuit explained in *Ford*, where one defendant moves for a severance "based on the asserted need for a co-defendant's testimony," the defendant seeking the severance must first "establish a *prima facie* case for severance" by "demonstrat[ing] (1) a bona fide need for the testimony; (2) the substance of the testimony; (3) the exculpatory nature and effect of the testimony; and (4) the likelihood that the co-defendant will testify if the cases are severed." *Id.* Nothing in Cudd's Motion establishes any of these elements. For example, Cudd provides no evidence that Rosa would testify for her if their cases were severed. She provides no indication of what Rosa would say or why that testimony would be exculpatory. Nor has she established a bona fide need for (or the admissibility of) someone else's testimony about Cudd's own "intent," whether she was "aware they were breaking the law," or whether she acted "corruptly." Motion at 4. And given that many of Cudd's actions inside the Capitol on January 6 were captured on video, and that she inculpated herself in later videos, it is hard to understand how Rosa's testimony would show that Cudd "did not 'picket'" or that Cudd "did not commit any of the offenses of which she is accused." *Id.* at 4-5. Cudd's Motion is thus plainly insufficient to establish that a severance is required so that she may call Rosa as a witness. *See, e.g.*, *United States v. Washington*, 12 F.3d 1128, 1133 (D.C. Cir. 1994) ("When fulfilling the *Ford* conditions, the movant must demonstrate the substance of her co-defendant's testimony with specificity sufficient to show that the testimony will be 'substantially

exculpatory.'"); *United States v. Harrison*, 931 F.2d 65, 68 (D.C. Cir. 1991) ("We think it clear that such 'conclusory statements by counsel' are patently insufficient to meet the exacting specificity requirement of *Ford*."); *Ford*, 870 F.3d at 731-32.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that Cudd's motion to sever be denied.

                              Respectfully submitted,

                              CHANNING D. PHILLIPS
                              Acting United States Attorney
                              D.C. Bar No. 415793

By:         */s/*
                AMANDA FRETTO
                D.C. Bar No. 1018284
                Assistant United States Attorney
                555 4th Street, N.W.
                Washington, D.C. 20001
                (202) 252-7268
                Amanda.Fretto@usdoj.gov

## CERTIFICATE OF SERVICE

On this 2nd day of April, 2021, a copy of the foregoing was served on counsel of record for the defendants via the Court's Electronic Filing System.

                              */s/*
                              AMANDA FRETTO
                              Assistant United States Attorney