## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES** | ) | |
| | ) | **Case No. 21- (TNM)** |
| **v.** | ) | |
| | ) | |
| **ELIEL ROSA** | ) | |

_____

### ELIEL ROSA'S MEMORANDUM IN AID OF SENTENCING

Mr. Rosa, through undersigned counsel, submits this memorandum in aid of his sentencing hearing scheduled to occur on October 12, 2021.  Mr. Rosa is very remorseful for his actions on January 6, 2021.  While he came to Washington D.C. to express his political views and to support then President Trump, he wishes that he had not gone to the Capitol grounds.  He did not intend to do so when he came to the District.  He was here to attend the rally, hear the speeches, and make his voice heard. He is saddened and embarrassed about what occurred that day.

To his credit, Mr. Rosa turned himself into law enforcement within a mere three days, voluntarily debriefed with law enforcement about his conduct that day, fully acknowledged all of his misconduct, and expressed true and full contrition.   He made, and makes, no excuses for having entered the Capitol building.  He stood ready then and stands ready now to accept the consequences for his behavior.

As this Court is well aware, the Court must impose a sentence that is "sufficient, but not greater than necessary, to comply with the purposes [of sentencing]." 18 U.S.C. §3553(a). In this case, understanding the full gravity of what occurred on January 6, 2021, and Mr. Rosa's role in those events, Mr. Rosa requests that the Court impose a period of probation with restitution and an appropriate fine consistent with his ability to pay. Mr. Rosa appreciates that the government recognizes his early and complete acceptance of responsibility and is not seeking a term of incarceration.

Mr. Rosa recognizes how serious the January 6 incident was and in no way attempts to minimize his involvement in it. Nevertheless, his charge is a Class B misdemeanor for which probation is typically an appropriate sentence. The sentencing guidelines do not even apply to misdemeanor offenses. Indeed, many felony offenses fall within a range that allows for a probationary sentence.

Mr. Rosa is 53 years old and hopes to one day become a United States citizen. He was born in a small town in Brazil, the son of a local evangelical pastor. He married his wife in 1991 in Brazil, and they had their first child in 2000. Two years later, they moved from Sao Paulo to Curitiba, where he worked for the town's Mayor. Due to political persecution, he and his family came to Midland, Texas in 2016 at the invitation of friends who were, and still are, the pastors of a small Mexican-American church. He intended to attend Regent University. He and his wife began working with the church. He applied for asylum, and the asylum application was granted in October 2018. His asylum status put him and his family on track for obtaining green card status after two years, and potentially citizenship status after five years. Mr. Rosa and his wife launched the Nehemiah220 Ministries and the Nehemiah School of Government in Midland

2

Texas.  They continue to live in Texas with their children.  He continues to have the support of his community as is evident by the attached letters.

Importantly, Mr. Rosa has no criminal convictions and no prior negative association with law enforcement. Mr. Rosa acknowledges how wrong he was to have entered the Capitol Building on January 6, 2021, and has steadfastly done so since immediately after the events of that day.  He did not force entry into the building, engage in or provoke any harm to any person or any property within the building, and, by the time he arrived, the doors of the Capitol had already been breached and people were freely going in and out. His intention when he came to the District was simply to attend the rally in support of former President Trump.  When he saw people heading toward the Capitol, he stayed to watch the conclusion of the President's speech. The then returned to the hotel to get food and water, and then made a decision he now greatly regrets – to follow the crowds to the Capitol.   When he got to the Capitol he walked in through an open door and followed the flow of people going through the rotunda and towards the East gate.  He heard what he believes to have been the shot that killed Ms. Babitt. After being asked to stand against the wall for a short period of time while officers dealt with that situation, he (and others) were asked to leave out the East door, and he complied immediately.  At no time did he engage in any violent behavior or cause any destruction of property. He posted a photo of himself walking towards the rally at 5 a.m. on the morning of January 6.  He did not post the photo inside the Capitol – that was added by the individual who found it online and posted it to his timeline.

Mr. Rosa turned himself in to the FBI three days later and acknowledged how ashamed he was for having participated in the events.  He voluntarily turned over his phone to law enforcement and from his initial appearance has pleaded for an opportunity to accept

responsibility for his conduct.  He has filed no motions and has consistently indicated a desire to

resolve his case.  Mr. Rosa deeply regrets his involvement in the January 6 incident.  As he has

stated:

> "January 6 was a point out of my "normal" curve. I did exactly what I teach folks not to
> do, meaning, I went against one of America's most critical founding principles, the one
> laid out by Publius in the Federalist: do not give in to passions originated at the "lower
> portions of your human nature. I have already expressed my profound shame to all of our
> local friends and supporters. I always was on the verge of losing my family because of
> that. But, I can't change that anymore. All I can do is to give my word that if I am
> allowed to stay in this country and fulfill my America dream, I will never ever commit
> such stupidity again. I love this nation! America is all I have right now! America is all my
> children have! America is where I want my body to rest when the time comes."

Mr. Rosa has been punished and deterred already. He was handcuffed for the first time

ever and spent several hours in a cell with before being brought before a judge and the public in

handcuffs.  While many of his friends have supported him, others have distanced themselves.

Several former financial supporters of the ministry have withdrawn their support.  He has been

subjected to public shame in his community.  He has always been very active in community

events, but has felt compelled to withdraw so as not to attract negative attention.  His family has

also suffered from the negative attention he brought upon them. His wife was very upset with

him and it caused difficulties for their family.  He has acknowledged that punishment is

appropriate, but wants the Court and public to know that he had no intention to harm this country

or democracy.

He has never before been arrested, is a hard-working, family man who wants more than

anything to remain in this Country with his family.  As he has stated:

> After three months I had . . .  the courage to watch the videos of that day. The voices of
> desperation coming from the Capitol Police officers will forever be engraved in my
> memory. I look forward to the day when I will be able to go to DC again and personally
> ask for their forgiveness for sadly being apportioned with those who brought so much

chaos and pain to them, emotionally and physically. . . . You can believe me that I will not repeat this mistake again in my life, not here, not anywhere.

The purposes of sentencing include punishment, rehabilitation, general deterrence, specific deterrence, and incapacitation. In this case, there appears to be no need for incapacitation, specific deterrence or rehabilitation. Mr. Rosa's likelihood of recidivism is very low. He has expressed genuine remorse and contrition, he turned himself in and cooperated fully with law enforcement, he turned over evidence voluntarily, and he immediately indicated a desire to plead guilty and did so as soon as the government made the plea offer. His acceptance of responsibility was complete and without reservation. Thus, the purposes of sentencing that seem most at play are general deterrence and punishment.

The public will be adequately deterred by the sentences meted out against those who perpetrated the violence and mayhem at the Capitol and the negative publicity and collateral consequences attendant to even a misdemeanor conviction for the others involved. Those who would not be deterred by these consequences are likely not deterrable. A period of probation does constitute punishment as one's liberty interests are curtailed by travel restrictions, reporting obligations, and limitations on one's personal freedoms. Moreover, in light of the damage done at the Capitol that day, although not directly by Mr. Rosa, a modest fine might be more appropriate.

The government concedes that Mr. Rosa committed no violent acts and destroyed no property. His actions within the Capitol have been tracked on the CCTV footage and this demonstrates that while unlawfully present in the Capitol with no excuse, he did not destroy property, steal property, commit violent acts, or encourage others to do so. He did not go far into the Capitol and left when asked to do so by law enforcement. Mr. Rosa engaged in no pre-

planning or coordination activities.  He came to D.C. with the purpose of showing support for

Mr. Trump, but he never intended to breach the Capitol and he never intended violence.  He

brought no weapons or even defensive gear with him.  He did not post on social media bragging

about his involvement or encouraging bad actions.  When he met with law enforcement after the

event, he made no excuses for his behavior, was sincerely contrite, did not blame law

enforcement for his predicament, and did not minimize his actions or rationalize them.

Another factor to consider is that Mr. Rosa accepted full responsibility very early on.

While it is not appropriate to punish an individual for asserting their right to go to trial and to

have the government held to its burden of proof, there is a societal benefit when people who have

done wrong acknowledge that wrongdoing in a public way as Mr. Rosa has done.  This has a

deterrent effect on future wrongdoing and has a positive effect on others taking responsibility for

their actions.

On the issue of sentencing disparity, counsel appreciates that the government has

attempted to set out meaningful distinctions in cases and some coherent rationale for the

recommendations it makes.  However, those distinctions are not as clear as the government has

suggested, and there is no scientific formula that will lead to sentencing uniformity.  In a District

with as many judges as this District has, there can be no definitive sentence that addresses the

unique facts and circumstances of each case.  Indeed, sentencing disparity is not prohibited, just

unwarranted sentencing disparity. Sentences in these cases have not been consistent.  *See e.g.*,

*United States v. Anna Morgan Lloyd*, 21-cr-164 (RCL) (probation imposed); *United States v.*

*Jessica and Joshua Bustle*, 21-Cr-238 (TFH) (probation with home confinement imposed);

*United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (probation with home confinement

imposed); *United States v. Danielle Doyle,* Crim. No. 21-00234 (TNM) (2 months probation

with fine imposed); *United States v. Valerie Ehrke*, 21-cr-97 (PLF). A few individuals who have pleaded guilty to a misdemeanor arising out of the January 6 events have been sentenced to a period of incarceration.  *See United States v. Karl Dresch*, Crim. No. 21-0071(ABJ);.  *United States v. Curzio, United States v. Jancart*, *United States v. Rau*, *United States v.*  Mazzaco.

And, the government's recommendations in cases where they have made them, are not necessarily consistent.  See e.g., *United States v. Danielle Doyle*, Crim. No. 21-00234 (TNM) (government recommended probation with two months home confinement despite noting she entered through broken window, yelled at officers, and was not fully transparent in her interview with law enforcement); *United States v. Robert Reeder*, Crim. No. 21-166 (TFH), (government requested 2 months incarceration then increased its recommendation to 6 months after learning he had engaged in violence inside the Capitol); *United States v. Jessica and Joshua Bustle*, 21-00238 (TFH) (government recommended probation with home confinement for Ms. Bustle who posted on social media that Mike Pence was a traitor, denied media accounts of violence were accurate, minimized the conduct of all of the rioters, called for a revolution even after the events of January 6, encouraged the rioters to be proud of their actions, and minimized the impact of that day on lawmakers and democracy); *United States v. Andrew Bennett*, Crim. No. 21-227 (JEB) (government requested probation with home confinement noting that Bennett espoused conspiracy theories about the election, was an admirer, albeit not a member of the Proud Boys, and boasted about his conduct).

In the end, this Court is faced with the task of meting out a just and appropriate sentence given all of the factors involved, and Mr. Rosa places his trust in this Court to do just that.

Respectfully submitted,

A.  J. KRAMER
FEDERAL PUBLIC DEFENDER

_____/s/_____
MICHELLE PETERSON
Chief Assistant Federal Public Defender
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C. 20004