```
                    UNITED STATES DISTRICT COURT
                   FOR THE DISTRICT OF COLUMBIA

   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
UNITED STATES OF AMERICA,          )  Criminal Action
                                   )  No. 21-68-2
vs.                                )
                                   )
ELIEL ROSA,                        )  October 12, 2021
                                   )  10:01 a.m.
                Defendant.         )  Washington, D.C.
                                   )
   *  *  *  *  *  *  *  *  *  *  *  *  *  *  *  *
```

**TRANSCRIPT OF SENTENCING**
**BEFORE THE HONORABLE TREVOR N. McFADDEN,**
**UNITED STATES DISTRICT COURT JUDGE**

**APPEARANCES:**

```
FOR THE GOVERNMENT: AMANDA FRETTO
                    U.S. Attorney's Office
                    for the District of Columbia
                    National Security Section
                    555 4th Street NW
                    Washington, DC 20530
                    (202) 252-7268
                    Email: amanda.lingwood@usdoj.gov

FOR THE DEFENDANT:  MICHELLE PETERSON
                    Federal Public Defender
                    for the District of Columbia
                    625 Indiana Avenue, NW
                    Washington, DC 20004
                    (202) 208-7500
                    Email: shelli_peterson@fd.org


ALSO PRESENT:       HANA FIELD, U.S. Probation

Court Reporter:     Elizabeth Saint-Loth, RPR, FCRR
                    Official Court Reporter
```

```
        Proceedings reported by machine shorthand, transcript
            produced by computer-aided transcription.
```

**P R O C E E D I N G S**

1          THE COURTROOM DEPUTY:  Your Honor, this is

2    Criminal Case 21-68-2, United States of America versus

3    Eliel Rosa.

4          Counsel, please come forward to identify

5    yourselves for the record, starting with the government.

6          MS. FRETTO:  Good morning, Your Honor.

7    Amanda Fretto on behalf of the United States.

8          THE COURT:  Good morning, Ms. Fretto.

9          MS. PETERSON:  Good morning, Your Honor.

10   Michelle Peterson on behalf of Mr. Rosa who is present.

11         THE COURT:  Good morning, Ms. Peterson.

12   Good morning, Mr. Rosa.

13         THE DEFENDANT:  Good morning, Your Honor.

14         THE COURT:  All right.  We're here for the

15   sentencing of the defendant, Eliel Rosa, who has pled guilty

16   to one count of parading, demonstrating, or picketing in a

17   Capitol Building, in violation of 40 U.S.C. 5104.

18         I have received and reviewed the presentence

19   investigation report and sentencing recommendation from the

20   probation office, as well as a sentencing memorandum from

21   the government and Mr. Rosa, including numerous attached

22   letters from others in Mr. Rosa's community.

23         Are there any other documents or materials that I

24   should have reviewed, Ms. Fretto?

```
1            MS. FRETTO:  No, Your Honor.

2            THE COURT:  And Ms. Peterson?

3            MS. PETERSON:  No, Your Honor.  That's it.

4            THE COURT:  Mr. Rosa, this sentencing hearing will

5    proceed in four steps, many of which may seem a bit

6    mechanical to you.  But I want you to keep in mind why we

7    are here today and the gravity of the situation.

8            You have committed a federal crime.

9            Today's proceeding is a serious matter, as it is

10   about the consequences that you will face because of your

11   decision to engage in criminal behavior in violation of

12   federal law.

13           The first step of today's hearing is for me to

14   determine whether you have reviewed the presentence report

15   and whether there are any outstanding objections to it and,

16   if so, to resolve those objections.

17           The second step is to hear from the government,

18   your counsel, and you, sir, if you wish to be heard about

19   sentencing in this case.

20           And finally, I must fashion a just and fair

21   sentence in light of the factors Congress set forth in

22   18 U.S.C. 3553(a).  As part of this last step, the Court

23   will actually impose the sentence along with the other

24   required consequences of the offense.

25           All right.  So turning to that first step, the
```

1    final presentence investigation report was filed on

2    October 5th, 2021.  The probation office filed its

3    sentencing recommendation on the same day.  And both

4    Ms. Peterson and the government filed their memoranda in aid

5    of sentencing on October 4th, 2021.

6             Does the government have any objection to any of

7    the factual determinations set forth in the presentence

8    report?

9             MS. FRETTO:  The government does not have any

10   objection to the factual determinations in the presentence

11   report.  However, I will note that the presentence reporter

12   and the defense did note a factual dispute on one of the

13   last pages of the presentence report.

14            Now, in the report it states -- and the government

15   became aware of the defense's position -- that one of the

16   Facebook posts on Mr. Rosa's Facebook may have not been

17   posted by him, but by someone else.

18            Now, that fact, from the government's perspective,

19   does not negate any element of the crime and will not have

20   an impact on sentencing today.  For that reason, I do think

21   that we can move forward.

22            The government will address Mr. Rosa's conduct;

23   and whether or not that post was made by him or someone else

24   has no bearing on the sentence that the government will

25   suggest today.

1          THE COURT:  And is that one of the "and we fight"?

2          MS. FRETTO:  No, Your Honor.

3          So in the statement of offense -- I will pull the

4    paragraph number.  We stated that:  On January 6th, Mr. Rosa

5    posted a photo of him and Ms. Jenny Cudd inside the

6    United States Capitol.

7          In the defense sentencing memorandum, I understand

8    that the defense pointed out that, on January 6th, he did

9    not post a photo of the two of them, but believes that a

10   photo was reposted on Mr. Rosa's Facebook by someone else.

11   That's what -- I believe that's the only Facebook post in

12   question for which there is a factual dispute.

13         THE COURT:  Okay.  Understood.

14         Thank you, Ms. Fretto.

15         Ms. Peterson, have you and Mr. Rosa read and

16   discussed the presentence report?

17         MS. PETERSON:  We have, Your Honor.

18         And all of our objections were resolved with that

19   one exception.  And I take responsibility for the statement

20   of offense not being entirely accurate.  We didn't know

21   which photo it referred to at the time.

22         When Mr. Rosa saw the actual photo the government

23   believed he posted on Facebook he said -- and I think he's

24   accurate, because it's posted as an addition to his

25   timeline.  Someone else found the photo online and posted it

1    on his timelime.  It's not material to sentencing, so I

2    don't think it has to be resolved one way or the other.  He

3    just wanted me to make it clear to the Court that he did not

4    post that photo.

5              THE COURT:  Understood.  Thank you.

6              And I agree that -- I don't think whether he

7    posted that specific photo or not would not make any

8    difference to me.

9              Mr. Rosa, can you approach the podium, sir.

10             Sir, are you fully satisfied with your attorney in

11   this case?

12             THE DEFENDANT:  I am fully satisfied, yes, sir.

13             THE COURT:  Do you feel that you have had enough

14   time to talk to her about the probation office's presentence

15   report and the papers the government filed in connection

16   with sentencing?

17             THE DEFENDANT:  Absolutely.

18             THE COURT:  All right.  Thank you, sir.

19             You may have a seat.

20             The Court will accept the facts as stated in the

21   presentence report, with the exception -- well, I think I am

22   just going to accept it as it's stated in the presentence

23   report.  But I agree with Ms. Peterson that whether Mr. Rosa

24   posted that one photo or whether somebody posted it about

25   him, it would not influence my decision one way or the

1    other.

2              The presentence report will serve as my findings

3    of fact for purposes of this sentencing.

4              Now, the sentencing guidelines do not apply

5    because this is a Class B misdemeanor.  I will now discuss

6    the applicable penalties which include imprisonment, fines,

7    probation, restitution, and forfeiture.

8              The maximum jail term the Court may impose for

9    Mr. Rosa's offense is six months.  The maximum fine that the

10   Court may impose for this offense is $5,000.  There is a

11   mandatory special assessment of $10 under U.S. --

12   18 U.S.C. 3013.

13             Mr. Rosa is eligible for up to five years of

14   probation because the offense is a misdemeanor; and, in

15   light of the parties' sentencing agreement, the Court will

16   order restitution in the amount of $500.

17             I don't believe the government is seeking

18   forfeiture in this case; is that correct, Ms. Fretto?

19             MS. FRETTO:  That's correct, Your Honor.

20             THE COURT:  And you agree with my other -- the

21   outline of the potential penalties otherwise?

22             MS. FRETTO:  Yes, Your Honor.

23             THE COURT:  Thank you.

24             Ms. Peterson.

25             MS. PETERSON:  We have no dispute with the way the

1    Court outlined it, the penalties.

2          THE COURT:  Okay.  Before I discuss the other

3    sentencing factors that bear on the Court's final decision,

4    I will at this point share with the parties the particular

5    sentence the probation office has recommended, taking into

6    account the advisory guideline sentence, the available

7    sentences, and all of the other factors listed in Section

8    3553(a).

9          The probation office has recommended a sentence of

10   no jail time; a 2-year term of probation, restitution in the

11   amount of $500, and a special assessment of $10.

12         I believe they also recommended 60 hours of

13   community service.

14         Am I remembering that correctly?

15         MS. FIELD:  Good morning, Your Honor.

16         We recommended the restitution obligation be paid,

17   the financial information disclosure, and compliance with

18   Immigration and Customs Enforcement.

19         THE COURT:  Okay.  But you didn't have a community

20   service element?

21         MS. FIELD:  I believe we previously provided the

22   Court with the language for the community service condition.

23         THE COURT:  Okay.

24         MS. FIELD:  I can, if the Court does need that

25   again.

1          THE COURT:  Okay.  Thank you.

2          The recommendation of the probation office is

3    based solely on the facts and the circumstances contained in

4    the presentence report.  Yes.  I think that 60 hours was

5    actually related to another case; that was my mistake.

6          I must now consider the relevant factors that

7    Congress set out in 18 U.S.C. 3553(a) to ensure that the

8    Court imposes a sentence that is sufficient but not greater

9    than necessary to comply with the purposes of sentencing.

10          These purposes include the need for the sentence

11    imposed to reflect the seriousness of the offense; to

12    promote respect for the law; and to provide just punishment

13    for the offense.  The sentence should also afford adequate

14    deterrence to criminal conduct; protect the public from

15    future crimes from the defendant; and promote

16    rehabilitation.

17          In addition to the guidelines and policy

18    statements, I must consider the nature and circumstances of

19    the offense; the history and characteristics of the

20    defendant; the need for the sentence imposed; the guideline

21    ranges; the need to avoid unwarranted sentence disparities

22    among defendants with similar records who have been found

23    guilty of similar conduct, and the types of sentences

24    available.

25          Does the government wish to be heard on the

1    application of the factors set forth in 3553(a), request a

2    variance, or otherwise make a sentencing recommendation?

3                MS. FRETTO:  Yes, Your Honor.

4                The government's recommendation, as set forth in

5    our sentencing memorandum, is 1 month of home confinement; a

6    probationary term of 3 years; 60 hours of community service;

7    and $500 in restitution.

8                We have arrived at this sentencing recommendation

9    based on our analysis of these factors.  And as outlined in

10   our sentencing memorandum, a number of these factors do

11   weigh in favor of incarceration; however, we do note that

12   other of these factors favor a more lenient sentence.

13               While we have analyzed all of these factors in our

14   memorandum today, I would like to focus on three of those

15   factors.

16               First, I would like to address the need for the

17   sentence to reflect the seriousness of the offense and

18   promote respect for the law.  Respectfully, we believe that

19   this factor favors incarceration.

20               The attack on the United States Capitol was an

21   attack on the rule of law.  The violence and destruction at

22   the Capitol on January 6th showed a blatant and appalling

23   disregard for our institutions and the orderly

24   administration of the democratic process.

25               The violence at the Capitol on January 6th was

1   cultivated to interfere and did interfere with one of the

2   most important democratic processes we have, the transfer of

3   power.

4           This was not a protest.

5           I would submit to the Court that it is difficult

6   to fathom a more serious offense to this community, to our

7   great nation, and to the very fabric of American democracy

8   than the one that was posed by those who knowingly and

9   eagerly engaged in the breach and occupation of the

10  United States Capitol in order to stop the certification of

11  a lawful and fair election.

12          Every single person who was present without

13  authority in the Capitol on January 6th contributed to the

14  chaos of that day and the danger posed to law enforcement,

15  the United States Vice President, members of Congress and,

16  generally, the peaceful transfer of power in this country.

17          No rioter acted in a vacuum.

18          The collective action of each and every rioter

19  contributed to the property damage, the injury, the

20  destruction, and the fear that law enforcement, members of

21  Congress, and their staff experienced on that day.

22          For these reasons, it is our position that

23  probation as a default -- even in these misdemeanor cases --

24  runs the risk of undervaluing the seriousness of these

25  offenses.

1          The next factor that I am going to address is

2    general deterrence.  We submit that this next factor, the

3    general deterrence, also weighs in favor of incarceration.

4    When we consider the goal of general deterrence, we are not

5    talking about dissuading individuals from lawful First

6    Amendment activity.

7          We are talking about deterring the next

8    discontented group from violently storming the Capitol the

9    next time, for example, we certify the results of our next

10   election.  We promote general deterrence by imposing

11   consequences.  Consequences are essential; they discourage

12   future criminal behavior.  And we note that general

13   deterrence is especially important here where the crime is

14   so public, so widely known, and so closely followed.

15          It is important for the general public to know

16   that probation is not the default for January 6th cases.

17   These factors all weigh in favor of incarceration.

18          The next factor that I would like to address is

19   the nature and circumstances of this particular offense.

20          Now, this is a more nuanced question.

21          Mr. Rosa knew that on January 6th, 2021, at the

22   United States Capitol, that elected members of the

23   United States House of Representatives and the United States

24   Senate were meeting to certify the vote count of the

25   electoral college of the 2020 presidential election.

1     He came to Washington, D.C.; he listened to

2     speeches, and then he went back to his hotel.  However, then

3     he made a series of choices.

4     He decided that he would then head to the Capitol

5     after -- in his words, after learning that Vice President

6     Pence was not going to take action.  He marched toward the

7     Capitol.  When he got over there he did not encounter a

8     peaceful protest.  He could have turned around right then,

9     but he didn't; he marched on.  When he arrived, in his own

10    words, hell had already broken loose.

11    He knew law enforcement was in front of them.  As

12    he stated, he heard people shouting:  Go, go, go.  He heard

13    bangs.  He knew pepper spray was being used.  He knew the

14    people in front of him were clashing against law

15    enforcement.  He could have turned around and just went back

16    to his hotel, yet he marched on.

17    The next choice that he made when he watched

18    people in front of him enter the Capitol, he knew that the

19    congressional certification was taking place inside; yet he

20    decided that he wasn't going to turn around, that he was

21    going to enter.  He knew he did not have lawful authority to

22    enter, yet he entered anyway.  He entered the upper west

23    terrace door less than two minutes after those doors were

24    breached.

25    The next choice that he had was staying inside the

1   United States Capitol for just about 20 minutes.  He entered

2   and remained there.

3          Now, while no officers blocked his path to entry,

4   there were clear signs of violent entry.  As he moved

5   through the Capitol, he would have seen broken glass and he

6   did see broken glass.  He would have heard the alarm

7   sounding throughout the Capitol rotunda and its antechamber.

8   He was aware that tear gas had been deployed.

9          However, he did not stop at the rotunda.  He

10  traveled deep inside the United States Capitol.  He admitted

11  that when he was inside the Capitol he saw and heard

12  individuals engaging with law enforcement.  He admitted he

13  saw and heard men with MAGA gear banging on doors.  He

14  admitted that he saw law enforcement attempting to push

15  people outside of the Capitol and smelled chemical

16  irritants.

17         Then he did make one final choice.  When asked by

18  law enforcement to leave, he complied and left the Capitol.

19         Now, while the nature and circumstances of the

20  offense support a sentence of incarceration, the government

21  also considers Mr. Rosa's lack of participation in any

22  assaultive or destructive conduct.

23         We take into account his early acceptance of

24  responsibility, compliance with law enforcement, and

25  expressions of remorse.

1           On January 6th, Mr. Rosa stormed the Capitol.  But

2    on January 9th he made the voluntary decision to walk into a

3    local FBI office to take responsibility for his actions.

4           Mr. Rosa, by taking responsibility, he acted

5    away -- in a way that the vast majority of other individuals

6    did not, by voluntarily arriving at the local FBI office.

7    The early resolution of this case and acceptance of

8    responsibility speaks well to Mr. Rosa, and we believe that

9    suggests a more lenient sentence is appropriate.

10          For those reasons, we are asking the Court to

11   sentence Mr. Rosa to 1 month of home confinement; a

12   probationary term of 3 years; 60 hours of community service;

13   and $500 in restitution.  Thank you.

14          THE COURT:  Ms. Fretto, did you come up through

15   superior court?

16          MS. FRETTO:  Yes, Your Honor.

17          THE COURT:  So you spent time handling

18   misdemeanors, as did I, back in the day?

19          MS. FRETTO:  Yes, I did, Your Honor.

20          THE COURT:  Did you ever recommend a sentence of

21   home confinement for a nonviolent misdemeanant with no

22   criminal history?

23          MS. FRETTO:  Your Honor, I have tried so many

24   cases, in the hundreds, it is difficult for me to remember

25   all of them.  However, I know that I have recommended

1    sentences along these lines.

2            And given what occurred on January 6th, the

3    government feels strongly that its recommendation is

4    appropriate and in line with the factors set forth here.

5            THE COURT:  What do you think home detention

6    accomplishes here?

7            MS. FRETTO:  It accomplishes a few things; one,

8    the seriousness of these cases cannot be undervalued, and

9    probation should not be the default.

10           However, we do take into account Mr. Rosa's

11   circumstance is quite different than other of those

12   individuals because, within three days, he did take

13   responsibility and he walked right into the local FBI

14   office, and he said:  Here I am.  We take that into account,

15   and that's why we're not asking for incarceration.

16           However, we're asking for home detention in order

17   to deter future conduct, but also to ensure that he does not

18   participate in any future conduct such as this.

19           THE COURT:  In the next month?

20           MS. FRETTO:  Yes, Your Honor.

21           There is a need for consequences here.

22           Probation simply will not cut it.  It will not

23   deter others, and it may not deter Mr. Rosa.

24           Now, his remorse does seem sincere.  However, what

25   is to prevent the next person from coming in here expressing

1    remorse to Your Honor in the hope that they will receive

2    probation?

3              THE COURT:  You know, I guess I just struggle to

4    see how home detention does much in terms of general

5    deterrence.

6              I can certainly see some usefulness if we're

7    worried about someone who is going to be going out and

8    committing more crimes in the evenings, or something like

9    that; but I really don't see that here.  And so I just --

10    yeah, the home detention idea feels odd in this case.

11              Thank you, ma'am.

12              All right.  Ms. Peterson, do you wish to be heard

13    on the application of the factors set forth in 3553, request

14    a variance, or otherwise make a sentencing recommendation?

15              MS. PETERSON:  Your Honor, I will be very brief.

16              I think I -- other than the conclusion that the

17    government draws, there is not much that I can dispute; the

18    government has used Mr. Rosa's own statements.

19              Please, Your Honor, if the Court can't hear me or

20    needs me to slow down or take the mask off, I'm happy to do

21    so.

22              Mr. Rosa, as Ms. Fretto indicated, went to the FBI

23    himself three days after the events and confessed fully;

24    told them exactly what he had done; expressed remorse.

25              This is not an individual who is -- there may be

1   people who don't really feel the remorse that they're

2   expressing, but Mr. Rosa is certainly not that person.

3          The fact that he turned himself in so soon after

4   the events and told the agents everything they needed to

5   know to prosecute him; and then, immediately upon appearing

6   in this court, indicated a desire to plead guilty.

7          The only thing that took time was getting a

8   reasonable plea offer approved by the U.S. Attorney's Office

9   that had to go through many channels, as I am sure this

10  Court is aware, to be approved for him to have a plea offer

11  that wouldn't have dramatic effects on his hope to some day

12  be a United States citizen.

13         He is facing immigration consequences for his

14  actions that day.  We don't know what the results of that

15  will be.  All I can tell the Court is that Mr. Rosa is

16  lawfully abiding by all of the orders of the immigration

17  court.  He has been cooperative with them all along.  He has

18  provided, through his counsel in that matter, updates to

19  them -- to the immigration court to let them know what the

20  status of his case is; so there is no reason to believe that

21  he won't continue to do that throughout this proceeding.

22         The Court -- he is in an unusual setting because

23  he is an immigrant; he is an asylee in this country.  So

24  this conviction has the potential of causing considerably

25  more harm to him than it would to the average person who

1    participated but --

2              THE COURT:  You are not suggesting that I should

3    be more lenient because he is not a U.S. citizen?

4              MS. PETERSON:  No, Your Honor.  Not at all.

5              I am just saying that one of the factors the Court

6    is to consider is the punishment and the possible

7    consequences, and that includes collateral consequences; so

8    I think it is something that the Court can consider.  And

9    it's also a reason why Mr. Rosa may have wanted not to

10   accept responsibility, may have wanted to challenge it,

11   because an acquittal would have not had any immigration

12   consequences.  But even in light of potential immigration

13   consequences, he accepted full responsibility, and he is

14   here today to do just that.

15             I think that both the probation office's report

16   and my sentencing memorandum have gone through all of the

17   personal factors about Mr. Rosa, so I won't elaborate upon

18   those at this point other than to say that he is -- I

19   believe he would like to make a statement to the Court as

20   well.

21             THE COURT:  Thank you, Ms. Peterson.

22             Mr. Rosa, you have the right to make a statement

23   or present any information to mitigate the sentence.

24             Would you like to say anything that you would like

25   me to consider before imposing sentence?

1          THE DEFENDANT:  Yes, Your Honor.

2          THE COURT:  All right.

3          THE DEFENDANT:  If I may take my mask off?

4          THE COURT:  You may.

5          THE DEFENDANT:  Your Honor, thank you for the way

6     you have conducted this process and for this opportunity to

7     speak today.

8          I am deeply, deeply thankful for Ms. Peterson's

9     counsel; and I highly honor the taxpayers who made her --

10    their -- her public defense possible for me.

11          I am also sincerely grateful that the United

12    States Government dropped the other charges and kept only

13    the charge I admitted to having broken when I voluntarily

14    turned myself into the FBI in Midland, Texas.

15          Last but not least, I want to express my eternal

16    gratitude to my family, my friends, and my local community

17    for the way they reprehended me yet, at the same time,

18    forgave and embraced me.  Because of them, I better

19    understand now and the real world the meaning of something

20    that I have always believed in, which is that the American

21    citizenship is a privilege to be earned, not a right to be

22    entitled to.

23          In a nutshell, I am truly grateful for everything

24    that I have learned in this painful yet intensely

25    pedagogical 279-day process.

1           Your Honor, I stand here today having in my heart

2    and mind James Madison's *If Men Were Angels* moral

3    principle; that led me to deep meditations and changes

4    throughout these long nine months.  I am definitely not an

5    angel so, on the one hand, I acknowledge that this whole

6    process was made necessary to highlight the passions that I

7    should have self-governed on January 6th, but I didn't.

8           As probably the only one noncitizen charged for

9    that day's events at the Capitol, I know my action both

10    shocked many American friends and misrepresented many law

11    abiding immigrants who came before me.

12           On the other hand, however, exactly because I am

13    not an angel, our creator granted me the ability to repent

14    for my wrongdoings and misdeeds.  In the Christian faith I

15    profess:  Repentance goes beyond remorse, as it demands an

16    effective change first of the heart, then the behavior.

17           So I humbly accept your final decision, Your

18    Honor.  And I hope this great republic of laws, not of the

19    whims of a man, can give me a second opportunity to prove my

20    change of ways.

21           Thank you very much.

22           THE COURT:  Thank you, Mr. Rosa.

23           Sir, you may remain at the podium.

24           I have assessed the particular facts of this case

25    in light of the relevant 3553(a) factors, and I am now going

1    to provide remarks for the record and for you, sir, about my

2    considerations in regard to the nature of the offense, and

3    your history and characteristics.

4            Sir, you participated in a shameful event, a

5    national embarrassment that made us all feel less safe, less

6    confident that this country can be ruled democratically

7    rather than by mob rule.  And I know that you didn't assault

8    anyone, that you didn't damage any property; and I am sure

9    you had no intent on breaking into the Capitol building when

10   you woke up on January 6th.  Those are important mitigating

11   factors in your favor.

12           But I hope you'll also see that when people allow

13   themselves to get swept up into a mob, they end up creating

14   chaos and lawlessness that the vast majority of those people

15   individually never would have caused or chosen to do; that's

16   the danger of mobs.

17           Your actions are especially surprising given your

18   clear knowledge of our nation's history and love of the

19   principles this nation was founded upon.  I mean, you have

20   been quoting *Federalist 51* to me, right here, that

21   emphasizes the need for government because men are not

22   angels.

23           Peaceful democratic transfer of power is essential

24   to our national ethos; and it is one of the things that has

25   separated this nation from others since its founding, as you

1    know.  How anyone who teaches civics classes and history

2    classes can march into the U.S. Capitol on January 6th

3    tweeting about fighting is beyond me, sir.

4         Your actions were also appalling in that you are

5    not even a U.S. citizen.  You are in this country on

6    sufferance, sir, out of the generosity of our national

7    character, not out of right or by birth.  For you to insert

8    yourself into this family argument -- this uniquely American

9    moment -- and to bring such heartache to the country that

10   has done so much for you is shocking, sir.  But none of us

11   should be judged by just our worst day alone.  And it is

12   clear to me that your conduct on January 6th was a strange

13   aberration for you.

14        You have no criminal history.  You are gainfully

15   employed.  And the numerous letters submitted on your behalf

16   testify to your many contributions to your community.

17        I am also struck by your acceptance of

18   responsibility -- or to use the deeper word that you used a

19   moment ago, your sincere repentance.

20        Frankly, I don't think I have ever heard of

21   someone turning himself in for a crime before he was even a

22   suspect.  I am a judge, and have been around the criminal

23   justice system for a long time, and I have never seen

24   someone do that.

25        You clearly recognize what a mistake your actions

1    were; and I am confident you will never do anything like

2    this again.  I think the most important thing you can do now

3    is to start repaying the country for the damage that you in

4    a small but significant way helped cause.

5              As I suggested previously, I really don't see what

6    purpose home detention would serve in this case.  I

7    certainly am not worried about specific deterrence to you.

8    And, frankly, given that all of us have been in some sort of

9    home detention for much of the last year and a half, I am

10   not sure that it has a lot of general deterrence either.

11             Having considered all of the 3553(a) factors, I am

12   cognizant that I must fashion a sentence that is sufficient

13   but not greater than necessary to comply with the purpose of

14   sentencing.

15             I will now impose the sentence:

16             It is the judgment of the Court that you,

17   Eliel Rosa, are hereby sentenced to serve a 12-month term of

18   probation, as well as payment of $500 in restitution, and a

19   $10 special assessment.

20             While on probation, you shall abide by the

21   mandatory and standard conditions of probation which are

22   imposed to establish the basic conditions for your conduct

23   while on probation.

24             I will waive any drug testing as unnecessary in

25   this case.

1       You shall also abide by the following special

2   conditions:  You must complete 100 hours of community

3   service within the next 10 months; the probation office will

4   supervise your participation in the program by approving the

5   program.  You must provide written verification of completed

6   hours to the probation office.

7       You are ordered to make restitution to the

8   Architect of the Capitol in the amount of $500.  Restitution

9   payments shall be made to the Clerk of the Court for the

10  U.S. District Court of the District of Columbia for

11  disbursement to the Architect of the Capitol, Office of the

12  Chief Financial Officer.

13      You must pay the balance of any financial

14  obligation owed at a rate of no less than $50 each month.

15  Successful payment of all financial obligations and

16  completion of all community service hours are specific

17  requirements of your probation period.

18      You must provide the probation office access to

19  any requested financial information and authorize the

20  release of any financial information.  The probation office

21  may share financial information with the United States

22  Attorney's Office.  You must not incur any new credit

23  charges or open additional lines of credit without the

24  approval of the probation officer.

25      The financial obligations shall be paid to the

1    Clerk of the Court for the U.S. District Court, at 333

2    Constitution Avenue, Northwest, Washington, D.C. 20001.

3    Within 30 days of any change of address, you shall notify

4    the Clerk of the Court of the change until such time as the

5    financial obligation is paid in full.

6          The probation office shall release the presentence

7    investigation report to all appropriate agencies which

8    includes the United States Probation Office in the approved

9    district of residence in order to execute the sentence of

10   the Court.

11         Pursuant to 18 U.S.C. 3742, you have a right to

12   appeal the sentence imposed by this Court if the period of

13   imprisonment is longer than the statutory maximum.  If you

14   choose to appeal, you must file any appeal within 14 days

15   after the Court enters judgment.

16         As defined in 28 U.S.C. 2255, you also have the

17   right to challenge the conviction entered or sentence

18   imposed if new and currently unavailable information becomes

19   available to you, or on a claim that you received

20   ineffective assistance of counsel in entering a plea of

21   guilty to the offense of conviction or in connection with

22   sentencing.  If you are unable to afford the cost of an

23   appeal, you may request permission from the Court to file an

24   appeal without cost to you.

25         Pursuant to *United States versus Hunter*, 809 F.3d

1    677, from the D.C. Circuit, in 2016, are there any

2    objections to the sentence imposed that are not already

3    noted on the record?

4              Ms. Fretto?

5              MS. FRETTO:  No, Your Honor.

6              THE COURT:  And Ms. Peterson?

7              MS. PETERSON:  No, Your Honor.  Thank you.

8              THE COURT:  Ms. Field, are you requesting transfer

9    to the -- of probation to the district in which Mr. Rosa

10   lives?

11             MS. FIELD:  Yes, Your Honor.  I have the transfer

12   paperwork if the Court would like to sign that now or at a

13   later date, but I do have that paperwork ready.

14             THE COURT:  All right.  Any objection to that,

15   Ms. Fretto?

16             MS. FRETTO:  No, Your Honor.

17             MS. PETERSON:  No, Your Honor.

18             THE COURT:  All right.  I will sign that.

19             And, Ms. Fretto, do you have a motion?

20             MS. FRETTO:  Yes, Your Honor.

21             Pursuant to the plea agreement, at this time the

22   government moves to dismiss Counts 1 through 4 of the

23   indictment as to Mr. Rosa.

24             THE COURT:  Okay.  Ms. Peterson.

25             MS. PETERSON:  No objection.

1          THE COURT:  Without objection, that motion will be

2     granted.

3          Anything further for the government?

4          MS. FRETTO:  No, Your Honor.

5          THE COURT:  And Ms. Peterson?

6          MS. PETERSON:  Nothing further, Your Honor.

7          THE COURT:  Thanks, folks.

8          (Whereupon, the Court and staff confer.)

9          THE COURT:  I am waiving any interest on the

10    financial obligations in light of my findings of the

11    defendant's inability to pay them, and I am waiving any fine

12    as well for the same reasons.

13          All right.  Thanks, folks.

14          THE COURTROOM DEPUTY:  All rise.  This Honorable

15    Court stands in recess.

16          (Whereupon, the proceeding concludes, 10:37 a.m.)

17                      **CERTIFICATE**

18

19          I, ELIZABETH SAINT-LOTH, RPR, FCRR, do hereby
      certify that the foregoing constitutes a true and accurate
20    transcript of my stenographic notes, and is a full, true,
      and complete transcript of the proceedings to the best of my
21    ability.

22          This certificate shall be considered null and void
      if the transcript is disassembled and/or photocopied in any
23    manner by any party without authorization of the signatory
      below.

24    Dated this 20th day of October, 2021.

25    /s/ Elizabeth Saint-Loth, RPR, FCRR
      Official Court Reporter